ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
RICHARD CHAE (SBN 224610)
rchae@carrferrell.com
CHRISTOPHER P. GREWE (SBN 245938)
cgrewe@carrferrell.com
CARR & FERRELL *LLP*
120 Constitution Drive
Menlo Park, California 94025
Telephone: (650) 812-3400
Facsimile:  (650) 812-3444

COLBY B. SPRINGER (SBN 214868)
cspringer@lrlaw.com
LEWIS AND ROCA LLP
2440 West El Camino Real, 6th Floor
Mountain View, California 94070
Telephone: (650) 391-1394
Facsimile:  (650) 391-1395

Attorneys for Plaintiff and Counterdefendant
PIXION, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PIXION, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITRIX SYSTEMS, INC., et al.,<br><br>                    Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. CV 09-03496 SI<br><br>*Consolidated* CASE NO. CV 11-00694 SI<br><br>**OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.**<br><br>Date:          October 5, 2011<br>Time:          3:30 p.m.<br>Judge:         Hon. Susan Illston<br>Courtroom:  Courtroom 10, 19th Floor |

1

## **TABLE OF CONTENTS**

2

I.  INTRODUCTION ......................................................................................................... 1

3

II. OVERVIEW OF THE PATENTS-IN-SUIT ................................................................ 2

4

    A.  Systems and Methods of the '515 Patent and the '304 Patent ....................... 6

    B.  Systems and Methods of the '191 Patent and the '331 Patent ....................... 6

5

    C.  Methods of the '489 Patent ............................................................................ 7

6

III. AGREED-TO CONSTRUCTIONS............................................................................. 7

7

IV. CONSTRUCTIONS OF THE DISPUTED TERMS .................................................. 8

8

    A.  Conference Server.......................................................................................... 8

    B.  Characteristics of [the Provided] Conferencing Data .................................. 9

9

    C.  Capabilities of the At Least One Client ...................................................... 11

10

        1.  *Capabilities are related to available resources* ............................... 12

11

        2.  *Capabilities are not limited to the four items identified by Citrix* ................. 12

12

        3.  *There is no temporal restriction on capabilities* ............................. 13

13

    D.  Client or Server Information ........................................................................ 14

14

        1.  *Client or server information is not limited to the 4 items identified by Citrix* . 14

15

        2.  *Citrix does not identify any "server information" in its construction* ............. 17

16

        3.  *Client or server information does not "result from" querying the client or server* ................................................................................................... 17

17

    E.  Publishing / Published................................................................................. 18

18

    F.  Receiving Indicia from a Client Device...................................................... 20

19

    G.  Receiving Information Allowing for Conference Attendance / The Receipt of Information Allowing For Conference Attendance .................................... 21

20

V.  CONCLUSION.......................................................................................................... 22

21

22

23

24

25

26

27

28

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*Phillips v. AWH Corp.*,                                               1, 9, 13, 20
4            415 F.3d 1303 (Fed. Cir. 2005)

5    *Vitronics Corp v. Conceptronic, Inc.*,                                    1
             90 F.3d 1576 (Fed. Cir. 1996)
6
     *Markman v. Westview Instruments, Inc.*,                                   1
7            52 F.3d 967 (Fed. Cir. 1995)

8    *Wright Medical Tech. v. Osteonics Corp.*,                            11, 16
             122 F.3d 1440 (Fed. Cir. 1997).
9
     *Embrex, Inc. v. Service Eng'g Corp.*,                                20, 21
10           216 F. 3d 1343 (Fed. Cir. 2000)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

1

## I.      INTRODUCTION

2

Pixion, Inc. ("Pixion") submits this brief in support of its proposed constructions of U.S.

3   Patent Nos. 7,369,515 (the "'515 Patent), 7,426,191 (the "'191 Patent"), 7,715,331 (the "'331

4   Patent"), 7,813,304 (the "'304 Patent"), and 7,877,489 ("the '489 Patent") (collectively the "Patents-

5   in-Suit").[1]   In its constructions, Pixion follows the teachings of *Phillips v. AWH Corp.* that "[t]he

6   words of a claim are generally given their ordinary and customary meaning" and the starting point of

7   a proper claim construction is analyzing "how a person of ordinary skill in the art understands a claim

8   term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) (quoting *Vitronics Corp v.*

9   *Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)).  Pixion has also applied the Federal Circuit's

10  fundamental claim construction framework, which instructs that one "should look first to the intrinsic

11  evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence,

12  the prosecution history [as] [s]uch intrinsic evidence is the most significant source of the legally

13  operative meaning of disputed claim language." *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576,

14  1582 (Fed. Cir. 1996); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir.

15  1995) (*en banc*) *aff'd*, 517 U.S. 370 (1996).  Pixion's proposed constructions are consistent with the

16  specification and prosecution history of each of the Patents-in-Suit.

17

In contrast, Defendants Citrix Systems, Inc.'s and Citrix Online, LLC's (collectively,

18  "Citrix") proposed constructions ignore the analytical framework of *Phillips* and *Vitronics*.  For

19  example, Citrix repeatedly selects examples of specific embodiments from the specification of the

20  Patents-in-Suit and improperly attempts to limit the claims in light thereof.  The result of Citrix's

21  efforts is a collection of constructions that are clearly contradicted by the intrinsic evidence as a

22  whole.  Citrix also construes terms different from the disputed claim terms and seek to inject

23  restrictions and requirements where none exists.  Defendant's proposed constructions are

24  unnecessarily restrictive, improper and should be rejected.

25

26

27

28

---

[1] Copies of the Patents-in-Suit are attached hereto as Exhibits A-E, respectively.

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

## II.     OVERVIEW OF THE PATENTS-IN-SUIT

The five Patents-in-Suit share a common specification and figures, and relate generally to "shared computer communications and computer conferencing." *See e.g.,* '515 Patent, 1:35-37.  As described, "computer conferencing" involves "two or more persons, each with a computer at one or more locations with a shared visual display and additional communications such as video, shared drawing, audio, text chat, etc." '515 Patent, 1:39-42.  The Patents-in-Suit claim priority to Provisional Patent Application Number 60/014,242, which was filed March 26, 1996.

Prior art computer conferencing systems in existence at that time suffered from various shortcomings.  For example, the '515 Patent discloses that conferencing systems were essentially limited to two types: video conferencing systems and so-called "whiteboard" systems. *See e.g,* '515 Patent, 1:44-2:4.  Prior art video conferencing systems, which typically took snapshots of the computer display at regular intervals (such as 30 times per second), wasted large amounts of bandwidth given that the image on a computer display generally does not change that often. *See* '515 Patent, 1:48-50.  Prior art whiteboard systems, on the other hand, were clumsy to use, lacked real-time responses, and limited presenters to the tools provided with the whiteboard program. *See* '515 Patent, 1:56-60.  Moreover, as the Patents-in-Suit disclose:

> Existing shared-display or shared-image systems rely on interception and communication of display or graphics system commands or depend on conferees' having similar hardware and software platforms. These systems lack flexibility and performance if the network connections are unreliable or have narrow bandwidth, or they require uniform hardware or software installations.
>
> Existing systems that provide single or multiple data stream handling of a nature different than shared-image conferencing depend on wide bandwidth network connections or on all participants having similar platforms.

'515 Patent, 1:61-2:4.

Recognizing these shortcomings, the inventors of the Patents-in-Suit devised "an improved general purpose data-stream computer network transport system and, in particular, an improved desktop conferencing system" '515 Patent, 2:8-11.  For example, FIG. 1 (reproduced below) illustrates an example of a conferencing system.

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

1
2
3
4
5
6
7
8
9
10



FIG. 1

11  The described conferencing system can be used "to display a shared collaboration among conference

12  participants ("conferees"), with one or more individuals located at each remote site connected to the

13  conference." '515 Patent, 2:11-14.  Conferees can be classified as "presenters" (who able to modify

14  shared images) or "attendees" (who are not able to modify shared images). '515 Patent, 2:14-17.

15      Central to the operation of the conferencing system is the conference server, which acts as a

16  kind of host for the conference.  As shown in FIG. 1, conferee client computers, including attendee

17  client computers and a presenter client computer, communicate with a "conference server" such as

18  conference server 14.  The conference server (in one embodiment described in the Patents-in-Suit)

19  "acts as a software-controlled switch that connects the presenter client with the attendee clients."

20  '515 Patent,10:44-46.   For example, conferencing software running on a presenter client computer

21  "captures information (such as image, sound, or other output information) from a program or

22  programs running on the presenter's machine and relays it to the conference server." '515 Patent,

23  7:46-52.  The conference server then "relays this information to all of the attendee clients

24  participating in the same session or conference." '515 Patent, 7:52-54.

25      The conferencing system advantageously allows for flexible operation among client

26  computers with different hardware and software platforms.  For example, the client computers "might

27  be personal computers, workstations, X-terminals, cable or satellite TV set-top boxes ("STBs"),

28  personal digital assistants ("PDAs"), game playing machines, WebTV™s, network computers

-3-

("NCs"), Infopads, visual telephones, and other existing or as yet undeveloped input and/or output devices." '515 Patent, 3:38-43.  In some embodiments, the conference server "matches the form of the image to the attendee clients before sending it." '515 Patent, 9:38-39.  Accordingly, "the system can apply a range of coder-decoder ("codec") facilities for the compression and decompression of images (in order to reduce bandwidth requirements during network transmission) and for the matching of image representations to client display requirements including input or output format transcoding (in order that the shared image appear visually similar to presenter and attendee)." '515 Patent, 3:50-56.  However, the shared image does not need to be exactly the same.  For example,

> The size of the window displaying the shared image on the attendee client need not match the size of the image sent from the presenter client in linear measure or in pixel measure. If the window is smaller than the image, the attendee can be given scrollbars to allow navigation around the shared image. It is also possible to configure the transcoding to scale the size of the image received by the attendee client.

'515 Patent, 16:36-43.  But on the other hand,

> The attendee client can also display the shared conference image automatically matched in size to the capture region set by the presenter, if the attendee desires and the attendee client computer is capable of such display.

'515 Patent, 16:44-47.

Moreover, the conferencing system advantageously allows for robust operation among clients having network connections with differing bandwidths.  For example, the client computers "might be connected to the server computer … by high or low bandwidth electrical or optical connections, radio, infrared, microwave, telephone modem, or hybrid combinations of these, or other existing or as yet undeveloped data communication technologies." '515 Patent, 3:43-49.  The conference server delivers the information received from a presenter client to the attendee clients while "taking into account that the speed of information transfer from the presenter client can change and the speed of transfer to the attendee clients can change and be simultaneously different for different attendees." '515 Patent, 10:46-49.  Thus, performance can be maintained even though the network connections may be unreliable or have narrow bandwidth, and even though the network connections may be qualitatively different for different attendees.

The conferencing system thus was designed to provide information to attendee clients having different requirements and performance specifications with minimal latency to the user.  The inventors of the Patents-in-Suit recognized that "real-time conferencing can be had without resort to full-motion video transmission." '515 Patent, 10:10-11.  Accordingly, the conferencing system may employ a scheme wherein "attendees' screens are updated as the presenter's screen is modified, or less frequently for attendees with slow machines." '515 Patent, 10:15-17.  The specification describes flow control as follows:

> Flow control between presenter client 12 and server 14 and between server 14 and attendee client 18 determines how often the attendee client receives information updating the image; this flow control, described in more detail below, depends on the characteristics and configurations of the clients, the server, and the network. Attendee client 18 can also send a command to conference server 14 to obtain the latest image change information.

'515 Patent, 8:28-35.

The inventors of the Patents-in-Suit also described many other novel features of their conferencing system and methods.  For example, the specification provides the following description of the many advantages of the inventive conferencing system and methods:

> Existing systems do not provide one or more of the following, which are explained in greater detail below: multi-speed at server and client, multiple reconfigurable coder-decoder transformations and transcodings, storage services (for, e.g., caching, failure recovery, recording, archiving, and playback), keyed access and privilege granting, adaptable servers and clients, multiple servers, adaptive and redundant server-to-server routing, load sharing among clients and servers, adaptive server-to-client matching, client/server and server/server backup and reconnection, multiple protocols for client connections, dynamic reconfiguration of server functions, and scaling beyond single process, host, or network limitations automatically or upon request.

'515 Patent, 4:57-5:2.

The conferencing system was designed to be used, for example, in conjunction with client devices equipped with a web browser for accessing a conference hosted by the conference server though a web page.  FIG. 2, reproduced below, "is a flowchart showing the process of introducing a conferee client 17 … to a conference ongoing on server 14, assuming that the conference setup is performed via the WWW."  '489 Patent, 8:47-51.

-5-

FIG. 2

**A.     Systems and Methods of the '515 Patent and the '304 Patent**

The '515 Patent and the '304 Patent claim systems and methods for conferencing between a server and a client.  The conferencing methods and systems involve determining or validating client "capabilities" and delivering conferencing data based on those capabilities.  These claims cover various inventive aspects as described above including, for example, flow control, operability among disparate hardware and software configurations, server load-balancing, and adaptive server-to-client matching.

**B.     Systems and Methods of the '191 Patent and the '331 Patent**

The '191 Patent and the '331 Patent claim systems and methods for conferencing between a server and a client.  The conferencing methods and systems involve examining "client or server information" and delivering conferencing data based on that information.  These claims cover various inventive aspects as described above including, for example, flow control, operability among disparate hardware and software configurations, server load-balancing, and adaptive server-to-client matching.

**C.     Methods of the '489 Patent**

The '489 Patent claims methods for introducing a client to a conference.  These claims cover various inventive aspects as described above including, for example, providing access to a conference through web-based browsers.

### III.     AGREED-TO CONSTRUCTIONS

The parties have reached agreement on the construction on four claim terms. [*See* Dkt. No. 78-1]  These constructions are as follows:

| Claim Term, Phrase, or Clause | Agreed Upon Construction |
|---|---|
| "web browser" | "an application executed by a computer to navigate among network resources" |
| "Universal Resource Locator associated with a conference"<br><br>"Uniform Resource Locator associated with a conference" | "an identifier that specifies where the conference is located on a network" |
| "real time" | plain and ordinary meaning |
| "conference listing" | "an identifier or address of a particular conference" |

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

## IV.    CONSTRUCTIONS OF THE DISPUTED TERMS

### A.    Conference Server

| Disputed Term | Pixion's Construction | Citrix's Construction |
|---|---|---|
| "conference server" | "a computer or several networked computers running conferencing software and configured to provide conference data to at least one client" | "a computer or several networked computers that provide conference data to a client computer after receiving the client's capabilities" |

The term "conference server" appears in independent claim 1 of the '515 Patent, independent claim 1 of the '304 Patent, independent claim 1 of the '191 Patent, and independent claim 1 of the '331 Patent. Pixion contends that this term means "a computer or several networked computers running conferencing software and configured to provide conference data to at least one client." Citrix argues that this term should be construed as "a computer or several networked computers that provide conference data to a client computer after receiving the client's capabilities"

Pixion's construction is the correct one. The specification provides a clear definition for conference server:

> In a specific implementation of the desktop conferencing system, conferee client computers ("conferee clients") connect to the "conference server," <u>a computer or several networked computers</u> (any of which may also be used by a conferee as a client computer) <u>running conferencing software</u>, typically by navigating a World Wide Web ("WWW" or "Web") browser through a predetermined Universal Resource Locator ("URL") that indicates a Web page describing the conference.

'515 Patent, 2:24-32 (underlining added). The specification also indicates that the conference server is configured to provide conference data to at least one client. In fact, in some embodiments, the conference server does not actually provide conference data to any clients; nevertheless, it is configured with the ability to do so. For example, the specification includes the following: "But the system is not limited to real-time; thus, for example, archiving is provided. It is not limited to multi-point; thus, for example, a single user can record for later playback." '515 Patent, 4:19-22. Thus, the specification is consistent with Pixion's construction.

1      Citrix's construction is wrong because the conference server does not always provide

2  conference data to a client computer.  For example, the specification describes embodiments wherein

3  a presenter client records a conference on the conference server for later playback. *See* '515 Patent,

4  4:19-22.  Moreover, Citrix improperly attempts to import the requirement that the conference server

5  "provide conference data to a client computer <u>after receiving the client's capabilities</u>."  Because the

6  conference server does not always provide conference data, it certainly does not necessarily do so

7  "after receiving the client's capabilities."  Citrix is adding a limitation to claim language that is not

8  present in the claim.  Introducing a new limitation is not only unnecessary but improper. *Phillips*, 415

9  F.3d at 1312 (noting that "once [we] begin to include elements not mentioned in the claim, in order to

10  limit such claim … we should never know where to stop").  Thus, Citrix's construction is wrong and

11  should be rejected.

12

13  **B.**     **Characteristics of [the Provided] Conferencing Data**

| Disputed Term | Pixion's Construction | Citrix's Construction |
|---|---|---|
| "characteristics of the provided conferencing data"<br><br>"characteristics of the conferencing data"<br><br>"characteristics of conferencing data" | "qualities, properties, or attributes inherent in or ascribed to [the provided] conferencing data" | "qualities, properties, or attributes of the provided conferencing data (i.e., size, content, rate of transmission and reception)" |

21      The terms "characteristics of the provided conferencing data", "characteristics of the

22  conferencing data", and "characteristics of conferencing data" appear in independent claims 1 and 17

23  of the '515 Patent, independent claims 1 and 17 of the '304 Patent, independent claims 1 and 39 of

24  the '191 Patent, and independent claims 1 and 39 of the '331 Patent.  Pixion contends that these

25  phrases mean "qualities, properties, or attributes inherent in or ascribed to [the provided conferencing

26  data."  Citrix argues that "characteristics" must be limited specifically to size, content, and rate of

27  transmission and reception.

28

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

Pixion's proposed construction is the correct one.  Although the specifications of the Patents-in-Suit do not refer to "characteristics of [the provided] conferencing data" outside of the claims, the Applicants of the Patents-In-Suit **clearly** indicated during prosecution that the "characteristics" were not as limited as Citrix now contends.  During prosecution of the '515 Patent, the Applicants stated the following:

> The Applicants have amended the claims of the present application such that all recitations to *aspects* now refer to *characteristics*.  A characteristic is generally recognized as a quality, property, or attribute inherent or ascribed to someone or something.  In the case of claim 23, for example, 'characteristics of the provided conferencing data' are recited.  Characteristics of conferencing data are inherent <u>and may include</u> – <u>but are not limited to</u> – size, content, rate of transmission and reception, <u>and so forth</u>.

[Ex. F, '515 Patent Prosecution History – Amendment A (April 27, 2006) at 13 (PIX000207) (underlining and italics added)][2]  Thus, the applicants of the Patents-in-Suit provided some **examples** of "characteristics", but they did not intend this term to be limited to those examples.

> A characteristic is generally recognized as a quality, property, or attribute inherent in or ascribed to someone or something while numerous <u>examples</u> of capabilities are expressly disclosed in the specification.

[Ex. F at 17 (PIX000211) (underlining added)][3]  Citrix's proposed construction seeks to impose a non-existent requirement that the recited "characteristics" be limited to size, content, and rate of transmission and reception and should be rejected.

Moreover, Citrix's proposed construction is **clearly** contradicted by dependent claims of the Patents-In-Suit and this is fatal to Citrix's position.  For example, dependent claims of the '515 Patent provide numerous other examples of "characteristics" including:

- "at least some information about at least part of the conferencing data" (claim 4)
- "at least one source of at least part of the conferencing data" (claim 5)
- "at least one destination of at least part of the conferencing data" (claim 6)
- "hardware involved in processing at least part of the conferencing data" (claim 9)

---

[2] Citrix also points to an identical statement made during prosecution of the '191 Patent. [*See* Dkt. No. 78-2 (Joint CC Statement, p. 3)]

[3] Citrix also points to an identical statement made during prosecution of the '191 Patent. [*See* Dkt. No. 78-2 (Joint CC Statement, pp. 3-4)]

- "software involved in processing at least part of the conferencing data" (claim 10)
- "at least one protocol used in processing at least part of the conferencing data" (claim 11)
- "at least one modification to a conference environment originated by the server" (claim 12)
- "at least one modification to a conference environment originated by at least one client" (claim 13)
- "a quantity of reception of at least part of the conferencing data" (claim 14)
- "comprises a quantity of transmission of at least part of the conferencing data" (claim 15)

'515 Patent, 36:31-37:7.  These dependent claims clearly illustrate that the term "characteristics" goes beyond simply "size, content, and rate of transmission and reception."  Dependent claims may aid in interpreting the scope of the claims from which they depend, and courts should "not interpret an independent claim in a way that is inconsistent with a claim that depends from it." *Wright Medical Tech. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997).  Thus, Citrix's construction is wrong and should be rejected.


C.    **Capabilities of the At Least One Client**

| Disputed Term | Pixion's Construction | Citrix's Construction |
|---|---|---|
| "capabilities of the at least one client" | "client parameters relating to resources available to the client" | "the client's display bit-depth, bandwidth of the connection between the client and the conference server, processor speed of the client, and the amount of memory available to each client confirmed by the conference server after to the client connects to the conferencing server" |

The term "capabilities of the at least one client" appears in independent claims 1 and 17 of the '515 Patent and independent claims 1 and 17 of the '304 Patent.  Pixion contends that this phrase means "client parameters relating to resources available to the client."  Citrix argues that "capabilities" must be limited specifically to the client's display bit-depth, bandwidth of the connection between the client and the conference server, processor speed of the client, and the

-11-

amount of memory available to each client confirmed by the conference server after the client

connects to the conferencing server.

### 1.   *Capabilities are related to available resources*

Pixion's construction is the correct one.  The specification of the Patents-In-Suit indicates that

capabilities are related to available resources.  For example, the specification includes the following:

> As each conferee joins a conference, the client and the conference server agree on the capabilities of the client, such as display bit-depth, bandwidth of the connection between client and the conference server, processor speed of the client, and the amount of memory available to each client. These parameters may be modified by the conferee, the client, or the server, this can be done automatically or on demand. <u>If the conference server determines that a client has sufficient computing resources</u>, some of the tasks, such as image data compression (for presenter clients), decompression (for attendee clients), update scheduling (both types of clients), and other image transformations and server management functions can be assigned to the client computers.

'515 Patent, 3:25-37 (underling added).  Other passages provide further evidence that "capabilities"

relate to available resources:

- "If these or other transcoding operations are needed, they can be carried out at the presenter client's side, the server side, or the attendee client's side, depending on where excess capacity or superior capability exists." '515 Patent, 9:48-52.

- "This decomposition can be changed dynamically to have more or fewer blocks to adapt to changes in the size of the capture rectangle by the presenter as described earlier, or to changing conditions in the loading and capabilities of clients, servers, and networks." '515 Patent, 13:55-59.

- "In the BLOCK-GRAB state, the presenter client estimates the amount of work required to prepare the grabbed blocks for transmission to the server, the attendee requirements, and local hardware capabilities." '515 Patent, 14:44-48.

Thus, Pixion's proposed construction is correct and should be adopted.

### 2.   *Capabilities are not limited to the four items identified by Citrix*

Citrix's proposed construction is wrong because the specification and prosecution history of

the Patents-In-Suit provide examples of "capabilities" besides those specifically named by Citrix.

For example, the specification provides the following:

> The server accepts system information from each client connection and notes the client's requirements (e.g., all images must be 256-color images) and capabilities (e.g., CPU speed, available hardware-assist for graphics, compression, DSP, Windows® DDB available).

'515 Patent, 18:58-62.  Thus, "capabilities" may include, for example, available hardware-assist for graphics.  Moreover, the specification makes clear that display bit-depth, bandwidth of the connection between the client and the conference server, processor speed of the client, and the amount of memory available to the client are simply **examples** of "capabilities":

> As each conferee joins a conference, the client and the conference server agree on the capabilities of the client, such as display bit-depth, bandwidth of the connection between client and the conference server, processor speed of the client, and the amount of memory available to each client.

'515 Patent, 3:25-29 (underlining added).

Additionally, the Applicants of the Patents-In-Suit **clearly** indicated during prosecution that the "capabilities" were not as limited as Citrix now contends.  During prosecution of the '515 Patent, the applicants stated the following: "These various references to the specification are exemplary. These references are not meant to be interpreted as exclusive or otherwise limiting." [Ex. F at 15 (PIX000209)][4]  Accordingly, Citrix's construction is wrong and should be rejected.

### 3.    *There is no temporal restriction on capabilities*

Finally, Citrix's proposed construction is wrong because it attempts to assign a temporal restriction where none exists.  Citrix appears to be attempting to construe the phrase "current capabilities of the at least one client."  The disputed claim term does not include the word "current" and does not have any temporal restrictions.  Capabilities of a client exist before the client connects to a conference server and they exist after the client connects to the conference server.  Introducing a new limitation is not only unnecessary but improper. *See Phillips*, 415 F.3d at 1312 ("once [we] begin to include elements not mentioned in the claim, in order to limit such claim … we should never know where to stop").  Accordingly, Citrix's construction is wrong and should be rejected.

---

[4] Citrix also points to an identical statement made during prosecution of the '191 Patent. [*See* Dkt. No. 78-2 (Joint CC Statement, pp. 4-5)]

**D.      Client or Server Information**

| Disputed Term | Pixion's Construction | Citrix's Construction |
|---|---|---|
| "client or server information" | This term should be construed according to the plain and ordinary meaning of its constituent words.<br><br>Information about the client or the server includes, for example, any data, facts, measurements, statistics and the like and is not limited to display bit-depth, bandwidth of the connection between client and the conference server, processor speed of the client, and the amount of memory available to each client. | "client or server system parameters (i.e., display bit-depth, bandwidth of the connection between client and the conference server, processor speed of the client, and the amount of memory available to each client) that result from querying the client or server" |

The term "client or server information" appears in independent claims 1 and 39 of the '191 Patent and independent claims 1 and 39 of the '331 Patent. Pixion contends that this phrase should be construed according to the plain and ordinary meaning of its constituent words. Citrix argues that "client or server information" must be limited specifically to display bit-depth, bandwidth of the connection between the client and the conference server, processor speed of the client, and the amount of memory available to each client that result from querying the client or the server.

Pixion's construction is the correct one. As shown throughout the specification and prosecution history of the Patents-In-Suit, "client or server information" simply means "information about a client or server", which is consistent with the plain and ordinary meaning of the constituent words of that phrase.

**1.      *Client or server information is not limited to the 4 items identified by Citrix***

Citrix's proposed construction is wrong because the specification and prosecution history provides examples of "client or server information" besides those specifically named by Citrix. Although the specifications of the Patents-In-Suit do not refer to "client or server information" outside of the claims, the Applicants of the Patents-In-Suit **clearly** indicated during prosecution that

-14-

the "client or server information" was not as limited as Citrix now contends.  For example, the

applicants pointed to the following passage:[5]

> Flow control between presenter client 12 and server 14 and between server 14 and
> attendee client 18 determines how often the attendee client receives information
> updating the image; this flow control, described in more detail below, depends on
> the characteristics and configurations of the clients, the server, and the network.

'191 Patent, 8:19-24.  This passage indicates that "client or server information" includes

characteristics and configurations of the clients, the server, and the network.  Such information can

include information provided in the data stream or measured on the network. *See* '191 Patent, 4:36-38

("The server-to-server interconnections can optimize routing by using information provided in the

data stream or measured on the network").  Client or server information can also include resources of

the client and server computers such as CPU speed, CPU load, compression and/or decompression

hardware, and display parameters. *See* '191 Patent, 4:46-52 ("These services can be provided

automatically depending on resources of the computers and network (for example, measured net

speed and central processing unit, or "CPU," load) and facilities available (for example, announced

client characteristics, such as CPU speed, compression and/or decompression hardware, or display

parameters.")  Additionally, the applicants identified "system information" as another example of

"client or server information":[6]

> The server accepts system information from each client connection and notes the
> client's requirements (e.g., all images must be 256-color images) and capabilities
> (e.g., CPU speed, available hardware-assist for graphics, compression, DSP,
> Windows® DDB available).

'191 Patent, 18:39-43.  This passage indicates that client information may include capabilities as well

as requirements.  Thus, "client information" is broader than "capabilities of the at least one client."

The applicants also pointed to other examples in the specification that referred to "system

information", and those examples also indicate that "client or server information" should be

construed broadly. [*See* Ex. G (191 Patent Prosecution History – Amendment A (May 25, 2006), p.

16 (citing '191 Patent at 18:39-43; 18:43-47))]

---

[5] [*See* Ex. G (191 Patent Prosecution History – Amendment A (May 25, 2006), p. 16)]

Even Citrix's own support belies its construction.  For example, Citrix cites the following passage in the parties' Joint Claim Construction and Pre-Hearing Statement:

> As an additional example, the server can read the time stamps in the data messages, and based on <u>the demands and resources of the clients, the network characteristics, and other information concerning the system</u>, can decide to route the data by alternative or redundant routes through other servers.

[*See* Dkt. No. 78-2 (Joint CC Statement, p. 6 (citing the'191 Patent, 18:66-19:4 (underlining added here)))]  The quoted passage indicates that the "client or server information" can include a number of types of information beyond the four types identified by Citrix, such as demands and resources of the clients as well the network characteristics (which one of ordinary skill in the art would recognize can include bandwidth, delay, error rates, etc.).

Moreover, Citrix's proposed construction is **clearly** contradicted by dependent claims of the Patents-In-Suit[7] and this is fatal to Citrix's position. *See Wright*, F.3d at 1445 (Fed. Cir. 1997) (courts should "not interpret an independent claim in a way that is inconsistent with a claim that depends from it.")  For example, the dependent claims of the '191 Patent provide numerous other examples of "client or server information" including:

- "[information] related to at least a size of at least part of the conferencing data" (claim 12)
- "[information] related to at least a calculation of a size of at least a part of the conferencing data (claim 13)
- "[information] related to at least some content within the conferencing data" (claim 14)
- "[information] related to at least some information related to at least part of the conferencing data" (claim 15)
- "[information] related to at least one source of at least part of the conferencing data" (claim 16)
- "[information] related to at least one destination of at least part of the conferencing data" (claim 17)
- "[information] related to a rate of reception of at least part of the conferencing data" (claim 18)
- "[information] related to a rate of transmission of at least a part of the conferencing data" (claim 19)
- "[information] related to hardware involved in processing at least part of the conferencing data" (claim 20)

---

[6] [*See* Ex. G (191 Patent Prosecution History – Amendment A (May 25, 2006), p. 16)]
[7] Citrix cites to dependent claims 12-28, 31, 32, 36, 38, 39, 41, and 42 of the '191 Patent to no avail. [*See* (Dkt. No. 78-2 (Joint CC Statement)]

- "[information] related to software involved in processing at least part of the conferencing data" (claim 21)
- "[information] related to at least one protocol used in processing at least part of the conferencing data" (claim 22)
- "a load of the server" (claim 26)
- "a load of at least one of the clients" (claim 27)
- "a load of at least one of the network connections" (claim 28)
- "at least one modification to a conference environment originated by the server" (claim 31)
- at least one modification to a conference environment originated by at least one client" (claim 32)

'191 Patent, 36:14-67; 37:10-15.  Since the independent claims must not be read to exclude these types of information, "client or server information" must also include them.  Thus, Citrix's construction is wrong and should be rejected.

### 2.     *Citrix does not identify any "server information" in its construction*

Citrix's construction is wrong because it appears to simply mirror its construction for "capabilities of the at least one client" (which is also wrong).  Arguably the only different type of "server information" that Citrix identifies is display bit-depth.  But the Patents-In-Suit never discuss the display bit-depth of the server because it is largely irrelevant.   As described above, the conference server (in one embodiment described in the Patents-In-Suit) "acts as a software-controlled switch that connects the presenter client with the attendee clients." '515 Patent, 10:44-46.  Conferencing software running on a presenter client computer "captures information (such as image, sound, or other output information) from a program or programs running on the presenter's machine and relays it to the conference server." '515 Patent, 7:46-52.  The conference server then "relays this information to all of the attendee clients participating in the same session or conference." '515 Patent, 7:52-54.  Thus, there is little reason to consider the display bit-depth of the server.  Accordingly, Citrix's construction is wrong and should be rejected.

### 3.     *Client or server information does not "result from" querying the client or server*

Moreover, Citrix's construction is wrong because the "client or server information" does not "result from" querying the client or server.  Citrix attempts to impose a requirement where none exists.  Although client or server information **may be determined** or **may be examined** by querying

-17-

the client or server, the information itself does not "result from" such querying.   Even Citrix's own

support belies its construction.  For example, Citrix cites the following passage in the Joint Claim

Construction and Pre-Hearing Statement:[8]

> (Content-based routing) Unlike IP routing for example, the system has access to
> the contents of the information being routed. Thus it can read the time stamps,
> type of data, and other information included in the base or delta block data or
> other system data.

'191 Patent, 28:46-50.  The quoted passage does not appear to relate to "client or server information"

but instead relates to information about the packets being routed.  Also, it does not appear that the

information "results from" querying the client or the server.  Thus, Citrix's construction is wrong and

should be rejected.


**E.      Publishing / Published**

| Disputed Term | Pixion's Construction | Citrix's Construction |
| --- | --- | --- |
| "publishing"<br><br>"published" | "making/made known, findable, or locatable" | "finding or being told information" |

The term "publishing" appears in independent claim 1 of the '489 Patent while the term

"published" appears in dependent claim 4 of the '489 Patent.  Pixion contends that these terms mean

"making/made known, findable, or locatable."  Citrix argues that they should be construed as

"finding or being told information."

Pixion's construction is the correct one.  Although the '489 Patent does not refer to

"publishing" or "published" outside of the claims, the specification makes it clear that "publishing"

means "making known, findable, or locatable."  For example, the specification includes the

following:

> First, the conferee locates a conference listing. This may be done by finding or
> being told a URL or using a locator service such as ULS™ or LDAP™. The
> conferee also specifies an icon to be used as a pointer label. Then the conferee
> points a WWW browser to the conference listing, where the server offering this

---

[8] [*See* Dkt. No. 78-2 (Joint CC Statement, p. 6)]

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

listing or an associated server validates the conferee and provides information that allows the attendee client conferencing software to start and to connect to conference server 14 itself, possibly after further validation.

'489 Patent, 8:51-60. The '489 Patent indicates that "[T]he conference can be set up any time earlier by anyone with access to this server function." '489 Patent, 2:29-30. One of skill in the art would understand this passage to mean that after a conference is set up, the conferencing system publishes a conference listings corresponding to that particular conference.

In order for a conferee to participate in a particular conference, the conferee must locate the correct conference listing. In order to locate the correct conference listing, the listing is either: (a) found by the conferee, (b) told to the conferee, or (c) located using a service such as ULS or LDAP. *See* '489 Patent, 8:51-60. In case (a), a published conference listing must be findable in order to be found. In case (b), a published conference listing is made known by virtue of the conferee being told. In case (c), a published conference listing must be locatable in order to be located. Thus, the proper construction of "publishing" is Pixion's construction of "making known, findable, or locatable."

Citrix's construction is wrong because it appears to be a construction of "locating" instead of a construction of "publishing." Locating and publishing are two very different processes, and the claims refer to both separately. The **conferencing system publishes** a conference listing so that "the conference listing is **located by a client device** seeking to enter into the corresponding conference." '489 Patent, 35:21-23; s*ee also* '489 Patent, 8:51-52 ("First, the conferee locates a conference listing."); '489 Patent, 36:16-18 (claim 4: "The method of claim 1, wherein the conference listing is published for subsequent location using a uniform resource locator (URL)."). Moreover, Citrix provides no credible support, either intrinsic evidence or extrinsic evidence, for its bizarre construction. Thus, Citrix's construction is wrong and should be rejected.

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)

**F.      Receiving Indicia from a Client Device**

| Disputed Term | Pixion's Construction | Citrix's Construction |
|---|---|---|
| "receiving indicia from a client device" | "receiving a sign from a client device"<br><br>Pixion's definition is based on Webster's New Encyclopedic Dictionary (1993) at page 509 – definition of "indicia" [Ex. H] | "receiving a communication from a client device" |

The term "receiving indicia from a client device" appears in independent claim 1 of the '489 Patent.  Pixion contends that this term means "receiving a sign from a client device."  Citrix argues that it should be construed as "receiving a communication from a client device."

Pixion's construction is the correct one.  While the '489 Patent does not refer to "receiving indicia from a client device" outside of the claims, Pixion's construction is entirely consistent with the intrinsic record because indicia is equivalent to a sign.  Reference to a dictionary is wholly appropriate "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322-23 (citing *Vitronics*, 90 F.3d at 1584 n. 6).  So it is here.  In the context of determining that a client has pointed a web browser to a conference listing, the specification informs one of ordinary skill in the art reading the patent documents of the following:

> Then the conferee points a WWW browser to the conference listing, where the server offering this listing or an associated server validates the conferee and provides information that allows the attendee client conferencing software to start and to connect to conference server 14 itself, possibly after further validation.

'489 Patent, 8:55-60.  Thus, the server receives a sign that the client has pointed a browser to the conference listing.

Citrix's construction is wrong because it substitutes a word "communication" for the word "indicia" when there is no logical connection or evidence to support this.  Citrix's resulting construction does not comport with the goal of claim construction that is "to understand and explain, ***but not to change***, the scope of the claims." *Embrex, Inc. v. Service Eng'g Corp.*, 216 F. 3d 1343,

-20-

1347 (Fed. Cir. 2000) (emphasis added).  Accordingly, Citrix's construction is wrong and should be rejected.

**G.      Receiving Information Allowing for Conference Attendance / The Receipt of Information Allowing For Conference Attendance**

| Disputed Term | Pixion's Construction | Citrix's Construction |
|---|---|---|
| "receiving information allowing for conference attendance"<br><br>"the receipt of information allowing for conference attendance" | This term should be construed according to the plain and ordinary meaning of its constituent words.<br><br>Information allowing for conference attendance may include a key but it is not so limited. | "receiving a key from the client computer to validate the client computer" |

The term "receiving information allowing for conference attendance" appears in independent claim 1 of the '489 Patent while "the receipt of information allowing for conference attendance" appears in claim 4 of the '489 Patent.  Pixion contends that these terms should be construed according to the plain and ordinary meaning of its constituent words.  Citrix argues that these terms should be construed as "receiving a key from the client computer to validate the client computer."

Pixion's construction is the correct one.  Consistent with Pixion's construction, the '489 Patent explains simply that conferee clients connect to the conference server "typically by navigating a World Wide Web ("WWW" or "Web") browser through a predetermined Universal Resource Locator ("URL") that indicates a Web page describing the conference." '489 Patent, 2:26-29. Furthermore, "[W]hen the attendee selects a link from the Web page to begin the conferencing session for that attendee, this action initiates the attendee client conferencing software." '489 Patent, 2:61-63.  The '489 Patent also explains that "[T]hen the conferee points a WWW browser to the conference listing, where the server offering this listing or an associated server validates the conferee and provides information that allows the attendee client conferencing software to start and to connect

-21-

to conference server 14 itself, possibly after further validation." '489 Patent, 8:55-60.  Thus, the

information is any information that the server can use to validate the conferee.

Citrix's construction is wrong because there is no requirement that a **key** be used to validate a

client or a conferee.  As the '489 Patent specification makes clear, a key is **optional**:

- "Conferee points browser to conference URL, <u>provides keyword if needed</u>"; "Conference URL script provides link to conference server; Conferee is validated" '489 Patent, FIG. 2 (underlining added).

- "At the time of setup, one or more password character strings ("keys") <u>can</u> be specified for the conference.  The key that a conferee gives at the time of attempting to connect to the conference server determines whether that conferee will be allowed access to the conference and what the conferee's initial privileges will be for participating in the conference and for modifying the setup of the conference." '489 Patent, 2:30-37 (underlining added).

Accordingly, Citrix's construction is wrong and should be rejected.

## V.    CONCLUSION

For all the foregoing reasons, Pixion respectfully requests that the Court adopt its proposed

constructions for the disputed terms of the Patents-In-Suit.

Respectfully submitted,

Dated:  September 1, 2011                    CARR & FERRELL *LLP*

By:  /s/ Robert J. Yorio
ROBERT J. YORIO
COLBY B. SPRINGER
RICHARD CHAE
CHRISTOPHER P. GREWE

Attorneys for Plaintiff and Counterdefendant
PIXION, INC.

OPENING CLAIM CONSTRUCTION BRIEF OF PIXION, INC.
(Case No. CV 09-03496 SI / Consolidated Case No. CV 11-00694 SI)