1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PIXION, INC.,

               Plaintiff,

  v.

CITRIX SYSTEMS, INC.,

               Defendant.
_____/

AND RELATED COUNTER-CLAIMS.
_____/

No. C 09-03496 SI

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff/counter-defendant Pixion, Inc. has moved for judgment on the pleadings related to defendant/counter-claimant Citrix Systems, Inc.'s affirmative defense and counter-claims alleging inequitable conduct. A hearing is scheduled for the motion on March 9, 2012. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS the motion.

**BACKGROUND**

Plaintiff Pixion is a company formed in 1995 that focuses on developing "cost-effective interactive online meeting environments such as web conferencing solutions." Second Am. Compl. at 2. Plaintiff alleges that defendant Citrix Systems "makes, uses, offers to sell, and sells in the United States and imports into the United States online conferencing and collaboration systems" that infringe various patents belonging to plaintiff. *Id.* at 5. Specifically, plaintiff alleges infringement of four patents: U.S. Patent No. 7,369,515 (the "'515 Patent"), No. 7,426,191 (the "'191 Patent"), No. 7,715,331 (the "'331 Patent"), and No. 7,813,304 (the "'304 Patent") (collectively the "Patents-in-

Suit"). The Court issued a Claim Construction Order in this case on November 1, 2011. *See* Doc. 91.

Citrix filed counter-claims against Pixion in its response to the Second Amended Complaint. *See* Doc. 64. Along with counter-claims seeking declaratory relief that the Patents-in-Suit are invalid, Citrix claims that the patents are unenforceable due to Pixion's alleged inequitable conduct during prosecution of the patents. Def.'s Ans., ¶¶ 40-118. In general, Citrix alleges that Pixion did not inform the United States Patent and Trademark Office ("USPTO") of certain negative office actions that occurred with respect to similar, copending patent applications prosecuted by Pixion. The counter-claims allege the following.

### A.    The '515 Patent

On April 14, 2005, attorney Susan Yee, acting on behalf of Pixion in prosecuting the application that led to the '515 Patent, submitted an Information Disclosure Statement ("IDS") ("4/14/05 IDS"[1]) to the USPO. Def.'s Ans. to SAC, ¶ 43. The 4/14/05 IDS included a submission titled "List of Co-Pending Patent Applications That May Be Directed Towards Similar Subject Matter." The list included, among other patent applications, U.S. Patent Application Serial Number 10/753,702 ("'702 application") by Joseph Saleschi, having a title of "Real-Time, Multi-Point, Multi-Speed, Multi-Stream Scalable Computer Network Communications System" filed on January 7, 2004. The '702 application had the same first-named inventor and title as the '515 patent. Def.'s Opp. at 9. Yee was also prosecuting the '702 application as attorney of record on behalf of Pixion. Def.'s Ans. at ¶ 47. The application that led to the '515 Patent was examined by Examiner Robert Wilson ("Examiner Wilson"), while the '702 application was before Examiner Franz B. Jean ("Examiner Jean").

On February 1, 2006, Examiner Jean issued a non-final office action in the '702 application. The office action rejected all the pending claims of the '702 application on double patenting grounds. On February 21, 2006, Yee, acting on behalf of Pixion, filed a response to the February 1, 2006 office action. On March 15, 2006, Examiner Jean issued another non-final office action in the '702 application, rejecting all the pending claims of the '702 application under 35 U.S.C. § 102 as being

---

[1] In the counter-claims, Citrix sometimes refers to this IDS as the "4/4/05 IDS." It appears that Cirtix means to refer to the April 14, 2005 IDS.

United States District Court
For the Northern District of California

1  anticipated.  On June 16, 2006, attorney Kenneth Castle, acting on behalf of Pixion by prosecuting the

2  '702 application, submitted a response.  On September 25, 2006, Examiner Jean issued a final office

3  action in the '702 application, again rejecting the pending claims as being anticipated under 35 U.S.C.

4  § 102.

5  During this activity regarding the '702 application, on April 24, 2006, Yee filed another IDS in

6  the application that led to the '515 Patent.  Yee did not disclose the February 1, 2006 office action in

7  the '702 application.  On September 14, 2006, Castle filed an IDS in the application that led to the '515

8  Patent.  Castle did not disclose either the February 1 or March 15, 2006 office actions in the '702

9  application.  Citrix contends that the '702 office actions were material to the prosecution of the '515

10  patent.  Def.'s Ans. ¶¶ 50, 57.

11  On December 8, 2006, Pixion filed another patent application, Serial Number 11/636,071 ("'071

12  application"), which was also before Examiner Jean.  Castle was, at one time, the attorney of record for

13  the '071 application, filing responses to office actions on June 12, 2007 and October 17, 2007.  In the

14  response filed October 17, 2007, Castle added dependent claim 24 which stated, in part, that "the

15  conference server is further configured to negotiate and establish capabilities of participants in the video

16  conference."  One or more claims of the '515 Patent include similar features.  Def.'s Ans. ¶ 65.

17  Dependent Claim 24 was later rejected by Examiner Jean.  Neither Yee nor Castle disclosed the

18  existence of the '071 application to Examiner Wilson during the pendency of the application that led

19  to the '515 Patent.

20  According to Pixion, the PTO ultimately granted both the '702 and '071 applications.. Pl.'s Mot.

21  at 8-9.  The '071 Application issued on August 26, 2008 as U.S. Patent No. 7,418,476, and the '702

22  application issued as U.S. Patent No. 7,310,675.

23

24  **B.    The '191 Patent**

25  The allegations regarding the '191 Patent are substantially the same as those regarding the '515

26  patent.  Again, Yee filed the 4/14/05 IDS in the application that led to the '191 Patent, listing the '702

27  application.  The '191 Patent was also before Examiner Wilson.  Yee did not disclose the February 1,

28  March 15, or September 25, 2006 '702 office actions in subsequent IDES to Examiner Wilson, nor did

1   she or Castle disclose the existence of the '071 application during the pendency of the application that

2   led to the '191 Patent, despite its similar subject matter.  Def.'s Ans. ¶ 70-100.

3

4           **C.      The '331 Patent**

5           Citrix argues that the '331 Patent is unenforceable for two reasons.  First, it argues that because

6   the '331 patent is a continuation of the '191 patent, the inequitable conduct it alleges against the '191

7   Patent renders the '331 patent unenforceable through the doctrine of infectious unenforceability.  Def.'s

8   Ans. ¶¶ 101-102.

9           Second, Citrix alleges independent inequitable conduct in the prosecution of the '331 patent,

10  which was also before a different examiner than the '071 Patent.  On July 10, 2008, Deepa Ravindranath

11  filed an IDS in the prosecution of the '331 patent that also included a "List of Co-Pending Patents or

12  Patent Applications That May Be Directed Towards Similar Subject Matter."  The July 10, 2008 list did

13  not include the '071 application.  Ravindranath was substantially involved in the prosecution of the '071

14  application as well.  Def.'s Ans. ¶ 105.  As with the '191 Patent, Citrix claims that there are similarities

15  between dependent claim 24 and claims in the '331 Patent.  The Non-Final Office Action rejected

16  dependent claim 24 stated, in part, that "the conference server is further configured to negotiate and

17  establish capabilities of participants in the video conference" as obvious.  The '331 patent includes

18  claims that are directed at least in part to the same thing.  Def.'s Ans. ¶ 107.

19          Citrix does state that Pixion eventually disclosed the '071 application to the '331 Examiner, but

20  that Pixion effectively did it too late.  Citrix admits that on January 20, 2010, Ravindranath filed an IDS

21  with the USPO that included Citrix's Answer and Counter-claims and the Office Actions and other

22  items from the prosecution of the '071 application.  Def.'s Ans. ¶ 112.  However, "the Examiner of the

23  '331 Patent did not consider these references during the prosecution of the '331 Patent," and notified

24  Pixion of that fact in a letter dated February 5, 2010.  Def.'s Ans. ¶¶ 115-116.  Instead of filing a

25  Request for Continued Examination in the prosecution of the '331 Patent to have the Examiner consider

26  the '071 Office Actions, Ravindranath paid the issue fee and allowed the '331 Patent to issue.  Def.'s

27  Ans. ¶ 117.

28

United States District Court
For the Northern District of California

**D.** **The '304 Patent**

Because the '304 Patent is a direct continuation of the '515 Patent, Citrix argues the doctrine of infectious unenforceability renders it unenforceable as well.  Def's Ans. ¶ 70.

On January 26, 2012, Pixion filed a motion for judgment on the pleadings, arguing that Citrix's inequitable conduct counter-claims fail to meet the applicable pleading requirements.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on the pleadings."  The legal standard for Rule 12(c) is virtually identical to the standard for a motion to dismiss under Rule 12(b)(6).  *See Dworkin v. Hustler Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989).

For a motion under either rule, the question presented is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

While Rule 12(c) of the Federal Rules of Civil Procedure does not expressly provide for partial judgment on the pleadings, neither does it bar them; it is common to apply Rule 12(c) to individual causes of action.  *See Moran v. Peralta Community College Dist*., 825 F. Supp. 891, 893 (N.D. Cal. 1993).  "Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment." *Id.*

When a court finds the pleadings deficient, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (per curium).

## DISCUSSION

"Each individual associated with the filing and prosecution of a patent application has a duty of

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1   candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all

2   information known to that individual to be material to patentability . . . ." 37 C.F.R. § 1.56(a).  A breach

3   of the duty of candor may lead to a finding of inequitable conduct rendering the entire patent

4   unenforceable. *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,* 488 F.3d 982, 999-1000 (Fed.

5   Cir. 2007).  "To hold a patent unenforceable due to inequitable conduct, there must be clear and

6   convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed

7   to disclose material information, or submitted false material information, and (2) intended to deceive

8   the [PTO]. . . ." *Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359, 1363 (Fed. Cir. 2007).

9        Pixion argues that Citrix has failed to meet the pleading requirements for inequitable conduct

10  claims.  Inequitable conduct claims must be pleaded with particularity under Fed. R. Civ. P. 9(b).

11  *Exegen  Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).  In *Exegen*, the Federal

12  Circuit set forth the standard for pleading inequitable conduct:

13         In sum, to plead the circumstances of inequitable conduct with the requisite
           particularity under Rule 9(b), the pleading must identify the who, what, when,
14         where, and how of the material misrepresentation or omission committed before
           the PTO.  Moreover, although knowledge and intent may be averred generally,
15         a pleading of inequitable conduct under Rule 9(b) must include sufficient
           allegations of underlying facts from which a court may reasonably infer that a
16         specific individual (1) knew of the withheld material information or of the
           falsity of the material misrepresentation, and (2) withheld or misrepresented this
17         information with a specific intent to deceive the PTO.

18  *Id.* at 1328-1329.  Pixion argues that Citrix fails to plead either materiality or intent to deceive.

19

20       **A.      '702 Application office actions vis a vis the '515/'191 Patents, '071 Application
                   office action vis a vis the '331 Patent**

21

22       As set forth in *Exegen*, the asserting party must include sufficient allegations of underlying facts

23  from which a court may reasonably infer that a specific individual knew of the withheld material

24  information and withheld it with a specific intent to deceive the PTO.  *Id.* at 1328.  Pixion argues that

25  Citrix does not allege "any underlying fact - not one fact - from which the Court could reasonably infer

26  that Pixion's attorneys or agents had any intent to deceive the PTO."  Pl.'s Reply at 2.  In fact, according

27  to Pixion, the only fact provided from which an inference can be drawn is the fact that Pixion voluntarily

28  identified the '702 application to the PTO during prosecution of the '515 and '191 Patents, and the '071

1   application during prosecution of the '331 Patent.  *Id.* (*citing* Def.'s Ans. ¶¶ 43, 66, 74, 112).  Citrix

2   responds that Pixion's disclosure of the '702 application as potentially material in the IDS only serves

3   to "highlight the significance of the office actions that were later withheld."  Def.'s Opp. at 9.  Citrix

4   relies on its argument that the significance of other examiners' opinions "establishes the factual basis

5   for an inference of specific intent to deceive the PTO."  *Id.* at 10-11.

6         The Court agrees with Pixion.  Citrix relies on the "significance of the office actions" as

7   evidence of an intent to deceive.  However, the Federal Circuit has repeatedly held that intent cannot

8   be inferred based solely on the alleged significance of withheld information.  In *Optimum Corp v.*

9   *Emcore Corp*, 603 F.3d 1313 (2010), the Federal Circuit stated,

10  > Optimum [the party alleging inequitable conduct] points out that this court has
11  > recognized that direct evidence of deceptive intent is rarely available, and that
    > intent may be inferred from circumstantial evidence.  *See Merck & Co. v.*
12  > *Danbury Pharmacal*, Inc., 873 F.2d 1418, 1422 (Fed. Cir.1989). Optimum
    > argues that deceptive intent can be inferred if the reference is 'highly material,'
13  > even with no evidence, direct or circumstantial, of intent to deceive.  However,
    > consistent precedent has rejected the notion that the materiality of a reference
14  > alone can suffice to prove deceptive intent.

15  *Id.* at 1321.  Instead, intent must be proven separately from materiality, regardless of how significant

16  or material the withheld reference is.  *See Astrazeneca Pharm. v. Teva Pharm. USA*, 583 F.3d 766, 770

17  (Fed. Cir. 2009);  *see also Abbott Labs. v. Sandoz Inc.*, 544 F.3d 1341, 1356 (Fed. Cir. 2008)

18  ("Materiality is not evidence of intent, which must be established as a separate factual element of a

19  discretionary ruling of inequitable conduct.")  Citrix does not set forth facts, apart from the alleged

20  materiality of the withheld information, from which deceptive intent can be inferred.

21        Instead, the facts set forth allow for the opposite inference.  It is undisputed that Pixion disclosed

22  the '702 Application in the 4/14/05 IDS, as well as certain office actions of the '071 application with

23  respect to the '331 Patent.  *See* Def.'s Ans. ¶¶ 43, 112.  The Federal Circuit addressed a similar situation

24  in *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380 (Fed. Cir. 1998).   There,

25  the court reversed a district court's grant of summary judgment on inequitable conduct where the losing

26  party (Exxel) had prosecuted similar patents before two different examiners.  As here, "both applications

27  were prosecuted before different examiners in the PTO by the same law firm, the responsible lawyers

28  in which were fully aware of the existence and details of both applications."

Although the  law firm disclosed the existence of the Katz application to the Venus application examiner, the existence of the Venus application was not disclosed to the Katz examiner until after the PTO had issued a notice of allowance for the Katz application.  Akron Polymer argued that the Venus application is material information to the Katz application, and that Container's [defendant Exxel's predecessor-in-interest] failure to disclose the Venus application proved Container's deceitful intent in prosecution of the Katz application.

. . .

The district court noted, but gave no weight, to the fact that Container *did* disclose the existence of the Katz application to the Venus application's examiner, and thus put the PTO on notice of the copendency of the two applications. This undisputed fact sponsors Exxel's main arguments as to why the judgment of unenforceability is incorrect.  Exxel contends, we think convincingly, that it hardly could be seeking to deceive the PTO as to the existence of copending applications when it actually disclosed the fact of copendency to the Venus examiner.

*Id.* at 1382-84; *see also Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1366 (Fed. Cir. 2003) ("Here, members of the family of applications that issued as the patents-in-suit were disclosed to the examiner assigned o the copending application. As in *Akron Polymer*, this fact points away from an intent to deceive.")

The facts here fall even further from the required showing -- or, at this stage, pleading -- of the intent to deceive.  Pixion disclosed the copending material application in the Information Disclosure Statements, but allegedly did not disclose certain negative office actions in the disclosed application. Examiners are not bound to follow other examiners' interpretations. *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.,* 487 F.3d 897, 919 (citing *Dayco,* 329 F.3d at 1368).  While the Federal Circuit has found rejections of copending applications to be material, *see id.* at 919, it has never found that failure to continuously update an IDS with negative office actions in otherwise disclosed applications evidences a specific intent to deceive.  Without more, the initial disclosure of the copending application in the IDS "points away from an intent to deceive." *Akron Polymer*, 148 F.3d at 1384.

The Court therefore GRANTS plaintiff's motion on the pleadings with respect to non-disclosure of certain office actions of the '702 application.  Because it grants on grounds of intent, the Court need not address materiality of the '702 application.

United States District Court
For the Northern District of California

1   **B.    '071 Office Actions vis a vis the '515 and '191 Patents**

2   A separate analysis is necessary with respect to the '071 application, as Citrix alleges that Pixion

3   did not disclose even its existence in prosecuting the '515 and '191 patents. Def.'s Ans. ¶¶ 66, 98.

4   Citrix alleges that on December 8, 2006, Pixion filed the '071 application; that Castle was, at one time,

5   the attorney of record for the application; that he filed a response to an office action on October 17,

6   2007; that the response added dependent claim 24, which stated that, "the conference server is further

7   configured to negotiate and establish capabilities of participants in the video conference"; that one or

8   more claims of the '515 and '191 Patents include similar features; that Examiner Jean rejected

9   dependent claim 24; and that although Yee identified some co-pending patent applications to Examiner

10  Wilson during pendency of the '515 and '191 Patents, Castle concealed the existence of the '071

11  application and its related office actions from Examiner Wilson.  Def.'s Ans. ¶¶ 63-66, 95-99.

12  Pixion argues that these claims are insufficient to show either materiality or an intent to deceive.

13  The Court agrees.  *Exergen* requires that the party alleging inequitable conduct "identify which claims,

14  and which limitations in those claims, the withheld references are relevant to, and where in the

15  references the material information is found."  *Exergen,* 575 F.3d at 1329.  Citrix broadly states that

16  "one or more claims of the '515 and '191 Patents include similar features" to dependent claim 24.

17  Def.'s Ans. ¶¶ 64, 97.  This is insufficient.  Indeed, Citrix appears to  admit this insufficiency, because

18  it asks, if the Court rules against them, for leave to amend to "provide specific claim citations in the '515

19  and '191 Patents these office actions would have been relevant to . . ."  Citrix's Opp. at 12.  Without

20  specific claim references, Citrix fails to meet the "what" prong of materiality.  *See Oracle Corp.,* 807

21  F. Supp. 2d at 898 ("DrugLogic does not specifically identify any claims . . . or particular limitations

22  in those claims to which the allegedly withheld references are relevant.")

23  The allegations also fail to show an intent to deceive.  As discussed above, Citrix cannot rely

24  simply on the materiality of the withheld references to create an inference of deceptive intent.  *See*

25  *Optimum Corp*, 603 F.3d at 1321.  ("[C]onsistent precedent has rejected the notion that the materiality

26  of a reference alone can suffice to prove deceptive intent.")  Here, as discussed, Citrix fails to show even

27  materiality.  Moreover, Citrix does not sufficiently allege knowledge:  Castle submitted the September

28  14, 2006 '515 IDS over a year before he submitted the October 17, 2007 '071 response to office action,

and Citrix otherwise alleges that a different attorney (Yee) processed the '515 disclosures. Def.'s Ans. ¶¶ 55, 65, 66; *see Exergen*, 575 F.3d at 1329 (finding failure to allege sufficient facts to support a reasonable inference any attorney "knew of the specific information in [one patent] that is alleged to be material in the [other] patent.") Beyond these two flaws, Citrix does not allege any specific facts separate from the materiality analysis from which the Court can infer an intent to deceive.

The Court therefore GRANTS plaintiff's motion on the pleadings with respect to the '071 office actions in the prosecution of the '515 and '191 patents.

## C.    Leave to Amend

The Federal Circuit has recently raised the already high standard for proving inequitable conduct. In *Therasense, Inc. v. Becton*, 649 F.3d 1276, 1289 (Fed. Cir. 2011), the circuit expressed concern about the "plague" of inequitable conduct claims that are "routinely brought on the slenderest grounds." The court noted that, "[b]ecause the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues." *Id.* at 1288. The court decided that, "low standards for intent and materiality have inadvertently led to many unintended consequences, among them, increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality. This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. The Federal Circuit thus raised the standard of materiality to require a showing of "but-for materiality," meaning that "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291. With respect to the intent to deceive, the specific intent no longer can be any reasonable inference, but "the single most reasonable inference able to be drawn from the evidence." *Id.*

The parties dispute whether *Therasense* applies to the pleading stage, as it was an appeal from summary judgment. Courts are currently split on the issue, including within this district. *Compare Abaxis, Inc. v. Cepheid*, 2011 WL 3741501, at *6 (N.D.Cal. 2011) (Koh, J.) (applying *Therasense* at pleading stage), *with Oracle Corp. v. Druglogic, Inc.*, 807 F. Supp. 2d 885 (N.D. Cal. Aug. 8, 2011)

United States District Court
For the Northern District of California

(Spero, M.J.) (finding it inappropriate at the motion to dismiss stage to apply *Therasense*).  This Court need not address whether the heightened standards apply to Citrix's counter-claims, because they fail on pre-*Therasense* authority.  *See Exergen*, 575 F.3d at 1329.  The Court raises *Therasense* because it informs the Court's decision not to grant leave to amend, as amendment of these claims would be futile. The undisputed fact that Pixion disclosed the '702 and '071 applications renders a future finding at any stage that "the single most reasonable inference able to be drawn from the evidence" is a specific intent to deceive by Pixion highly unlikely, whatever facts Citrix chooses to allege.  Moreover, both the '702 and '071 applications were eventually granted, diluting the alleged relevance of the intermediary negative office actions and rendering "but for" materiality even less likely.  The Court therefore GRANTS plaintiff's motion to dismiss the pending counter-claims for inequitable conduct without leave to amend.[2]

**IT IS SO ORDERED.**

Dated:  March 8, 2012

SUSAN ILLSTON
United States District Judge

---

[2] This ruling is not meant to resolve Citrix' separate, recently-filed motion to amend (Docket No. 107).